lml

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff,　　　　)
　　　　　　　　　　　　　　　　)
　　　vs.　　　　　　　　　　　　)　　　Case No. 07-40071-JAR
　　　　　　　　　　　　　　　　)
COEN C. POTTS,　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　Defendant.　　　　)
_____　)

## MEMORANDUM AND ORDER
## DENYING DEFENDANT'S MOTION TO SUPPRESS

　　　This matter is before the Court on defendant's Motion to Suppress (Doc. 19) as evidence

the property, other materials, and any statements made by the defendant during the search of his

apartment on October 25, 2006.  Defendant also moves to suppress all evidence discovered

during the subsequent search of his computer hard drive and other electronic storage devices.

An evidentiary hearing was held on January 7, 2008, after which the Court requested the parties

to submit written closing arguments.  The Court has reviewed the evidence and the parties'

submissions and is prepared to rule.  For the reasons set forth in detail below, defendant's motion

is denied.

I.　　　**Background**

　　　***Affidavit***

　　　On October 19, 2006, FBI Special Agent Stacie Lane presented Magistrate Judge

Sebelius with a search warrant affidavit, which sets forth the following facts.  Agent Lane is a

child exploitation investigator, with experience in the investigation of cases involving the use of

computers and the internet to commit violations of Federal law, including child pornography and child exploitation laws.  On September 8, 2006, Agent Lane was contacted by an unidentified witness regarding defendant.  The informant said she met defendant in October 2005 through a telephone dating service.  The informant and defendant spoke online and by telephone a few times before meeting in person in Norman, Oklahoma.  Defendant told the informant that he was an art teacher in Topeka.  His dating profile said he liked younger girls.  The informant was age 22 at the time and thought defendant, who was in his mid-30's, considered her a young girl.

During the meeting in October 2005, defendant reminded the informant that he said he liked younger girls, then showed the informant a large binder that contained two school photographs of female students (approximately age five and six), numerous pictures defendant said that he had drawn, and three photographs that the informant quickly realized were child pornography.  The informant described two of the photos, but could not recall the third, because she stopped looking once she realized the pictures were child pornography.

Defendant asked the informant if she was interested in the photos.  The informant expressed her shock and said she could not understand why defendant was showing her the pictures and why he was into "*that*."  Defendant indicated that he had downloaded the pictures from the internet, and gave the informant the impression that he frequently looked at child pornography on the internet. The informant told defendant that what he was doing was wrong, and that he needed to get help if he was attracted to children.

After the meeting, the informant and defendant spoke by telephone three times.  Each time, the informant raised the subject of defendant's interest in child pornography to find out if he was still viewing the images.  The informant and defendant talked about the subject in an

indirect way, such as "are you still into that," or "you know . . . ."  Defendant said that he was too old to stop and/or that he had been doing it too long to stop.

During one of the calls, probably the last call on November 17, 2005, the informant was talking to defendant about her young niece.  Defendant said something to the effect of "that's my type" and "wouldn't you like to play with her . . . do her?"  Defendant also shared his fantasy that he and the informant were married with children that defendant could "deflower," and talked in detail about how he would sexually abuse their children and "no one would know."

In approximately September 2006, the informant told her boyfriend about defendant and the child pornography, and he urged her to call law enforcement.  The informant called the FBI on September 8, 2006.  During her telephone conversation with Agent Lane, the informant could not explain why she did not contact law enforcement sooner, other than being reluctant to deal with the issue since it made her uncomfortable.  The informant became upset each time she discussed the meeting with defendant and his comments concerning child exploitation.

On September 8, 2006, the Kansas Department of Education website was queried and revealed that defendant is a qualified teacher of art for grades K-12.  On September 11, 2006, a query of the Employment Security Commission revealed that defendant had been employed by the Auburn-Washburn, Kansas school district since 2002.  Contact with the school superintendent confirmed that defendant was employed as an art teacher.  A query of public records revealed defendant's address at an apartment in Topeka, Kansas, as well as a local telephone number.

On October 2, 2006, the informant made a recorded telephone call to defendant at his

home telephone number.  During this telephone conversation, defendant confirmed that he still worked as an art teacher and that he owns his own computer.  Three significant exchanges occurred during this recorded conversation.  First, the informant raised the issue of child pornography in a discreet way.  Without specifically referencing children or child pornography, the informant said that "you sound like you're still into that . . . the whole . . ." and "like when we talked before—that's what you kinda' wanted, so I don't know, I was just hoping you didn't." Defendant responded that "it's not like it's 24 hours a day or anything and in fact I really, uh, don't hit any of those sites, uh, anymore than, I mean I know where they are, but I don't revisit them very often" and "it costs money to get on the Net, that often . . .when you're downloading things that take hours to download."

Second, defendant said that "it's not something a girl has to like" and "it would surely be a fun beneficial thing, but I realize . . . I'm probably not going to find anyone who's into that" and "even if it was . . . fantasy kind of thing, that would. . . .be fine with me."

Third, defendant raised the fact that the informant wanted him to get help. The informant responded that "there's help out there for people that have addictions . . .or like things that are not normal" and "I'm not saying you're not normal, but you know what I mean."  Defendant said that "I have admittedly . . .I've had a porn addiction in a way."  When the informant asked "[d]o you think that's what led to *that*?", defendant responded "well no" and "it's just because I've been really by myself and really sort of unsuccessful with women virtually my whole life . . . . "

On October 4, 2006, Agent Lane met with the manager of defendant's apartment building.  The manager confirmed that defendant currently leased an apartment and that he

believed defendant lived alone.  Agent Lane conducted a surveillance of defendant's apartment building and observed that his building was easily identified by white numbers and that his apartment number was prominently marked in black on the front door.

### Search Warrant

Based upon the information provided by the informant and the recorded telephone call, Agent Lane prepared an affidavit in support of a search warrant.  On October 19, 2006, the magistrate judge signed a search warrant authorizing the seizure of items described in Attachment B, which lists evidence pertaining to images of child pornography as well as evidence of child erotica, information pertaining to the sexual interest in child pornography, and sexual activity with children.  The search warrant authorized a search of defendant's residence, including any computers and electronic storage devices found in defendant's residence.  An Addendum to the warrant sets forth the search procedure of the electronic data contained in computer equipment subject to the warrant.

On October 25, 2006, Agent Lane and other law enforcement officers executed the search warrant.  After officers entered the residence, defendant told Agent Lane that he had child pornography on his computer, but he did not know the number of images.  Defendant said that he has been teaching for twelve years, he has never been in trouble at school, and he keeps his viewing of child pornography separate from his job.

During the execution of the search warrant, officers seized numerous items from defendant's apartment.  Officers located 52 printed images of what appeared to be child pornography in a box in defendant's bedroom.  These images appeared to be printed from the internet using a home printer.  Some of the images were stored inside page protectors.  Officers

also located three ring binders on defendant's bed, which contained a total of 253 images of child pornography inside page protectors.  In addition to images, officers seized miscellaneous papers from the bedroom, kitchen, and living room.  Numerous pages contained handwritten notations of user names or passwords and internet cites, many containing names suggesting child pornography.  Officers also seized a Dell computer with Western Digital Caviar Hard Drive, three USB thumb drives, and 17 Lexar JumpDrives.

### Search of Computer and Jump Drives

Sergeant Jeffrey Owen, Forensic Computer Examiner, Team Leader and Operations Manager at the Heart of America Regional Computer Forensic Laboratory ("RCFL"), conducted the examination of defendant's computer and other electronic storage devices.  Sergeant Owen has been assigned to the RCFL since 2003, and during that time has conducted over 30 computer examinations per year.  During this same time period, Sergeant Owen has received continuous training in the area of computers and forensic examinations.

Agent Lane conducted the initial review of the defendant's computer and storage devices and book marked files using a program called Case Agent Investigative Review ("CAIR").  CAIR allows the case agent to review the evidence remotely over a secure connection and to book mark files of interest.

Sergeant Owen, and another computer examiner, Thad Winkelman, conducted a review of the computer and electronic storage devices. The first examination occurred on January 8, 2007.  A second examination occurred on March 9, 2007, and amounted to a review of items examined in January.  The computer examiners reviewed Agent Lane's book marked files.  Generally, Sergeant Owen conducts a keyword search on the book marked files in order to

narrow his search to files that are consistent with the evidence he has been asked to find. A visual review of these files is required in order to make this determination.

While conducting a search for child pornography, including evidence of receipt, distribution, and internet history, Sergeant Owen identified thousands of images of child pornography located on the computer and the various storage devices. Sergeant Owen also identified emails discussing an interest in the sexual abuse of children, and web sites and newsletters that claim to offer images of child pornography. Based upon this examination, Sergeant Owen formed the opinion that the defendant received images of nude and semi-nude children principally by joining groups on the internet.

### Testimony at Suppression Hearing

During the hearing on January 7, 2008, Agent Lane testified that she was the author of the affidavit presented to the magistrate judge. At the time that she prepared the affidavit, Agent Lane believed that crimes involving child pornography had occurred, that evidence of these crimes would be found at defendant's residence, and that evidence of these crimes would be found on a computer located at defendant's residence. Agent Lane also testified that, at the time she left Judge Sebelius's chambers with the signed search warrant, she believed the warrant was legally valid, and that she had probable cause that evidence of crimes involving child pornography would be found at defendant's address.

On cross examination, Agent Lane testified that she corroborated defendant's identity, the vehicle he was driving, and his employment. Agent Lane testified that she had checked defendant's email address provided by the informant with the FBI's Innocent Images Unit, and determined that defendant had not been identified in any prior child pornography investigations.

7

Agent Lane felt significant the fact that one of the images of child pornography the informant described was an image that Agent Lane recognized from her previous investigations.

Over the government's objection as to relevancy, defense counsel questioned Agent Lane regarding information she had not obtained prior to submitting the affidavit and warrant to the magistrate judge.  Agent Lane testified that, although the informant said that she and defendant had communicated over the telephone and online a few times, she had not obtained records of these telephone or online communications.  Although the informant claimed she had stopped all contact with defendant by November 2005, she was able to produce an email address to give Agent Lane.   The informant told Agent Lane that she and defendant met through a "Christian" dating service.  Agent Lane did not verify the existence of this dating service, nor did she talk to people close to the informant.

Agent Lane testified that if she had discovered prior to seeking the warrant that the informant had contact with defendant over a two year period as opposed to one and a half months, she would have talked to her about it, but did not know that it would affect her belief that she had probable cause.  Agent Lane testified it would possibly cause her to wonder if the informant were telling the truth.

Agent Lane testified that she was concerned that the informant did not report these events for ten or eleven months, which raised a red flag and made her question whether the informant was telling the truth.  Agent Lane testified that as a result, she questioned the informant "quite diligently, in my mind, as far as what she was saying, and I requested her to explain to my satisfaction why she did not report it."  The informant said that she had recently told her new boyfriend about the child pornography and he encouraged her to call the FBI.

Agent Lane did not talk to the boyfriend, the informant's family, friends or coworkers to attempt to verify informant's explanation for the delay.

The informant told Agent Lane that she met defendant in person in Norman, Oklahoma, and watched a Nebraska football game.  The informant said she met defendant in a room on the campus of the University of Oklahoma where they watched the game and ate pizza.  She also claimed that somewhere on campus, defendant showed her images of child pornography and that she left approximately ten minutes after seeing the images.  School was in session at the time, although the informant was not a student at the university.  Agent Lane admitted that she took the informant at her word, although generally collectors of child pornography do not take images to public places to show them to others.  Agent Lane did not ask where on campus this occurred or do any follow up investigation on this issue.

Agent Lane said that in an effort to determine the informant's credibility, she verified that she would be willing to testify.  Agent Lane also talked to the informant about making a recorded telephone call to defendant in order to corroborate her information. Agent Lane spoke with the informant several times, and described her demeanor.  Agent Lane  perceived the informant as reluctant, but knew reporting was the right thing to do.  The informant cried often when discussing what happened. The informant attempted to make the recorded telephone call to the defendant from the FBI Oklahoma City office, but after several tries was unsuccessful. Agent Lane considered the informant's willingness to testify, to make repeated attempts to record a telephone call then completing the call from her home with no agents present when she did not have to go through with it, reflected positively on her credibility.

Agent Lane was also questioned regarding the nexus between the possession of child

9

pornography and defendant's residence.  Agent Lane testified that she spoke to the manager of defendant's apartment complex who believed the defendant lived alone.  Agent Lane also testified that the most secure place for defendant to keep child pornography would be at his residence, that she made that determination because defendant worked at two different schools, and that all the child pornography cases she had investigated involved possession of the materials at the individual's residence.  Agent Lane did not verify that defendant had internet service at his residence.

Agent Lane was questioned regarding items listed in the Addendum regarding evidence of distribution of child pornography, and evidence of child molestation.  Agent Lane testified that the information from the informant, prior to the application for the search warrant, was that defendant had expressed an interest in sexually abusing children.  Agent Lane also testified that she did not draft the addendum, and the government proffered that it is a standard form drafted by the district magistrate judges for use in any search warrant seeking electronic data collection.

Sergeant Owen testified at the hearing that forensic software, including Forensic Toolkit and Encase, automatically finds all images from computer files so that he does not have to open each file to determine its content.  Sergeant Owen testified that he did not open every file on defendant's computer, but limited his search to items Agent Lane identified as most relevant to her investigation and concentrated on those files most likely to contain child pornography images, correspondence and other documents.  He also testified that file names can be changed to disguise the true nature of their content.  Although the Addendum authorized the opening and viewing of every file the examiner deemed relevant, Sergeant Owen testified that he did not need to do this during the examination in this case.  In other examinations, however, he has reviewed

text documents that were responsive to key word searches and has had to open those documents to determine whether or not the item falls within the scope of the search warrant.

Over the government's objection to relevancy, defendant testified regarding the actual nature of his relationship with the informant.  Defendant testified that he met the informant through an adult personals dating service, not a Christian dating service, in approximately June 2004.  Defendant testified that he met the informant at a Days Inn hotel on September 18, 2004, and that after the meeting they communicated multiple times a month, by email and telephone, through January 2006.

## II.    Discussion

The premise of defendant's motion to suppress is that the affidavit did not support probable cause to believe that child pornography would be found in defendant's apartment. Alternatively, defendant contends that Agent Lane's investigation used to support the affidavit presented to the magistrate was inadequate and the facts asserted in that affidavit were incomplete as a result of the deficient investigation.  Accordingly, defendant argues, the *Leon* good faith exception does not apply.  Finally, defendant argues that the warrant authorized an overly broad, general search of the computer and electronic storage devices.  The Court discusses each argument in turn.

### A.    Probable Cause

Defendant argues that the affidavit fails to establish probable cause because the information supporting the affidavit is stale, based on an ambiguous reference to pornography, and does not provide a nexus to defendant's residence.

Reviewing courts give "great deference" to the issuing magistrate's determination of

probable cause.[1]  If the judge only considered a supporting affidavit in issuing the warrant, the reviewing court likewise determines the existence of probable cause for the warrant exclusively from the supporting affidavit's four corners.[2]  The court's duty is to ensure that the issuing magistrate had a "substantial basis" for concluding that the affidavit in support of the search warrant established probable cause.[3]  "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."[4]  The test is whether the facts presented in the affidavit would "warrant a man of reasonable caution" to believe that evidence of a crime will be found at the place to be searched.[5]  Thus, only a probability and not a prima facie showing is the standard for probable cause.[6]

### Stale Information

Whether information in an affidavit is stale depends on "the nature of the criminal activity, the length of the activity, and the nature of the property to be seized."[7]  While defendant may have showed the informant the binder of child pornography in 2005, when considered in the

---

[1]*United States v. Finnigin*, 113 F.3d 1182, 1185 (10th Cir. 1997).

[2]*United States v. Harvey*, 514 F. Supp. 2d 1257, 1259 (D. Kan. 2007) (citations omitted).

[3] *United States v. Nolan*, 199 F.3d 1180, 1182 (10th Cir. 1999) (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

[4] *Id.*

[5] *Id.* (citing *Texas v. Brown*, 460 U.S. 730, 742 (1983)).

[6] *Id.* (citing *Gates*, 462 U.S. at 235).

[7]*United States v. Perrine*, 518 F.3d 1196, 1205-06 (10th Cir. 2008) (quoting *United States v. Riccardi*, 405 F.3d 852, 860 (2005)).

context of the other information in the affidavit—that he indicated he had downloaded the pictures from the internet and the October 2, 2006 recorded telephone conversation between defendant and the informant—it provides a sufficient nexus for the finding of probable cause. This is especially true given the nature of defendant's criminal activity, the possession of child pornography. The Tenth Circuit has explained:

> The observation that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes is supported by common sense and the cases. Since the materials are illegal to distribute and possess, initial collection is difficult. Having succeeded in obtaining images, collectors are unlikely to destroy them. Because of their illegality and the imprimatur of severe social stigma such images carry, collectors will want to secret them in secure places, like a private residence. This proposition is not novel in either state or federal court: pedophiles, preferential child molesters, and child pornography collectors maintain their materials for significant periods of time.[8]

During the October 2006 recorded call, the informant broached the subject of defendant's continued interest in viewing child pornography. As in their previous conversations, defendant and the informant discussed the topic in an indirect way. In response, defendant confirmed that he was "still into that," and acknowledged that this might disappoint the informant. Defendant stated that he still visits those sites, but not "very often" because it is expensive to download things that "take hours to download" from the internet. Defendant confirmed his interest in a woman who would be "into that . . . even if it was a fantasy kind of thing." This conversation, recorded seventeen days prior to the magistrate judge's review of the search warrant, corroborates the informant's statements with defendant, that they had a relationship, that they had an ongoing discussion about defendant's interest in child pornography, that his interest

---

[8]*Id.* (quoting *Riccardi*, 405 F.3d at 861) (further quotation omitted).

continued, and that his interest was an issue between the two of them.  Moreover, the lack of a specific reference to the type of  pornography is not fatal to the magistrate judge's determination of probable cause.  The context of this and previous discussions provide a substantial basis for the magistrate judge's reasonable inference that the informant and defendant were talking about child pornography and defendant's interest in younger girls.

### Nexus to Residence

The Tenth Circuit has adopted the general rule that probable cause requires a "nexus between [the contraband to be seized] or suspected criminal activity and the place to be searched."  Probable cause to search a location does not depend on direct evidence or personal knowledge that contraband is located there.[9]  The affidavit need not aver that criminal activity actually occurred in that location.[10]  It is enough when the affidavit established a "nexus between the objects to be seized and the place to be searched" from which "a person of reasonable caution" would "believe that the articles sought would be found" there.[11]  This nexus "may be established through . . . normal inferences as to where the articles sought would be located."[12]

The Court finds that the affidavit establishes a sufficient link between the defendant's residence and the described criminal activity.  Crimes involving child pornography are often tied to a secure place, like a private residence.[13]  In this case, the magistrate judge reasonably inferred

---

[9]*United States v. Hargus*, 128 F.3d 1358, 1362 (10th Cir. 1997), *cert. denied*, 523 U.S. 1079 (1998).

[10]*United States v. Harvey*, 514 F. Supp. 2d 1257, 1261 (D. Kan. 2007) (citing *United States v. $149,442.43 in U.S. Currency*, 965 F.2d 868, 874 (10th Cir. 1992)).

[11]*Hargus*, 128 F.3d at 1362.

[12]*Harvey*, 514 F. Supp. 2d at 1261 (quotation omitted).

[13]*United States v. Riccardi*, 405 F.3d 852, 861 (10th Cir. 2005) (citation omitted).

that defendant would keep the child pornography at his residence.  Defendant confirmed during the recorded phone call to his home telephone number that he owns his own computer. Defendant discussed taking hours to download materials from the internet, an activity that would be difficult to accomplish while on the job as a teacher.  Defendant had printed images of child pornography, which he would not likely store on school property.  And, Agent Lane verified that defendants' landlord believed that defendant lived alone.  Accordingly, the Court finds that the affidavit provided the issuing magistrate judge sufficient information upon which to make a common sense decision that evidence of the crime as charged would be located at defendant's residence.

### B.      Good Faith Doctrine

Even assuming that the affidavit did not support probable cause, the Court upholds the search based on the good faith exception of *United States v. Leon*.[14]  The good faith doctrine evolved because "when police officers act in good faith and reasonable reliance on a search warrant, the evidence obtained during the search should not be suppressed even if the warrant was lacking in probable cause."[15]  This doctrine protects "the exclusionary rule's purpose of deterring improper police action, rather than punishing errors made by the magistrates."[16] Because searches approved by a warrant "are favored," a "magistrate's determination that probable cause exists is entitled to great deference."[17]  Similarly, because "officers are generally

---

[14]468 U.S. 897 (1984).

[15]*United States v. Lora-Solano*, 330 F.3d 1288, 1294-95 (10th Cir. 2003) (citing *United States v. Leon*, 468 U.S. 897, 913 (1984)).

[16]*United States v. Gonzales*, 399 F.3d 1225, 1229 (10th Cir. 2005) (citing *Leon*, 468 U.S. at 916).

[17]*Id*. at 1228-29.

not required to second-guess the magistrate's decision in granting a warrant, . . . evidence obtained pursuant to a warrant that is later found to be defective is not properly excluded when the warrant is relied on by the officers in objective good faith."[18]  "In answering this question, the court should consider all of the circumstances and assume that the executing officers have a 'reasonable knowledge of what the law prohibits.'"[19]

There are four exceptions to reliance on the good faith doctrine: (1) where the judge issued the warrant on a deliberately or recklessly false affidavit; (2) where the judge abandoned his neutral and detatched judicial role; (3) where the affidavit is so lacking in indicia of probable cause that it would be unreasonable for the officer to rely on it; and (4) where the warrant is so facially deficient that an officer cannot reasonably believe it to be valid.[20]

Defendant invokes only the third exception, arguing that the information provided to the magistrate judge does not support a finding of probable cause and the good faith exception is not applicable when an officer conducts an inadequate investigation.[21]  Specifically, defendant argues that Agent Lane presented an affidavit that was missing facts that she would have learned if an adequate investigation was conducted and thus the error was not the magistrate judge's.

---

[18]*Id.* (citing *Leon*, 468 U.S. at 916).

[19]*United States v. Riccardi*, 405 F.3d 852, 863 (10th Cir. 2005).

[20]*Leon*, 468 U.S. at 923, 926.

[21]In his Closing Argument and Brief, defendant specifically clarifies that he does not claim that Agent Lane intentionally or recklessly presented false information to the magistrate judge and does not raise a challenge to the warrant under *Franks v. Delaware*, 438 U.S. 154 (1979), as such an argument assumes that an affidavit supports probable cause and requires the defendant to prove that information in the affidavit critical to that probable cause was false and presented knowing that it was false or with reckless disregard for the truth.  Instead, defendant takes the position that the affidavit in this case does not support probable cause and that the *Leon* good faith exception does not apply.  Accordingly, the Court does not address this issue, despite the government's suggestion that defendant's argument that Agent Lane conducted a deficient investigation amounts to a challenge under *Franks*.

Defendant points to several "red flags" that would have caused a reasonable person to question whether the informant was telling the truth.  Defendant argues that Agent Lane ignored these red flags and did not do very basic follow up and investigation that would have revealed that the informant was lying to her.  Had the magistrate judge known about the informant's lies, defendant claims, he would not have issued a search warrant based almost exclusively on her uncorroborated claims.  These red flags include: the informant waited eleven months to make a report to the police; defendant showed her the binder on the campus of The University of Oklahoma; they met through a Christian dating service; the informant produced an email address for defendant ten months after she claimed that all contact with him had stopped; and the informant could recall a specific date of November 17, 2005, as the last phone conversation she had with defendant.

In support of his argument, defendant relies on *United States v. Andrews*,[22] where the court held that the *Leon* exception did not apply when the affidavit was deficient in investigative foundation and evidence of the deficiency was known or should have been known to the deputies.[23]  The court explained that *Leon* provides a remedy for magistrate errors, while the case before it involved errors by the affiants.[24]  In that case, the court was faced with a search warrant that described and authorized the search of an entire single family dwelling when in fact the structure was a multiple family dwelling.[25]  The court found that reasonable inquiry by the

---

[22]713 F. Supp. 1319 (D. Minn. 1989).

[23]*Id*. at 1322.

[24]*Id*.

[25]*Id*.

deputies would have revealed the true nature of the dwelling, and thus *Leon* did not apply to the facts before it.[26]  The court also observed that the *Leon* Court noted that the exclusionary rule was designed to deter various forms of police misconduct, and that suppression should be limited to those cases where it will have a deterrent effect on the actions of law enforcement officers.[27]

Although the Court does not disagree with the basic tenets of *Leon* set forth by the *Andrews* court, it does find that the context of that case is distinguishable from the case before it.  While *Andrews* dealt with a factual mistake of the affiants regarding the description of the premises to be searched, this case involves the credibility of the informant and whether a reasonable inquiry by Agent Lane would have revealed the informant was not truthful about some of the information she provided.  Defendant does not cite, nor could the Court find, any cases that expand the ruling in *Andrews* beyond the context of the an erroneous description of the premises to be searched.  While both scenarios invoke the third exception to *Leon*, the law involving the reliability or veracity of informants is well settled, and involves a different analysis.

In *Illinois v. Gates*,[28] the Supreme Court abandoned the requirement that an officer set forth an informant's reliability in the affidavit.  The courts are to determine an informant's credibility or reliability and basis of knowledge under a flexible totality of the circumstances standard.[29]  "Veracity and basis of knowledge are not, however, rigid and immovable

---

[26]*Id.*

[27]*Id.* at 1321-22 (citing *United States v. Leon*, 468 U.S. 897, 917-18 (1984)).

[28]462 U.S. 213, 238 (1983).

[29]*United States v. Smith*, 63 F.3d 956, 961 (10th Cir. 1995), *judgment vacated on other grounds*, 516 U.S. 1105 (1996).

requirements in the finding of probable cause.  A deficiency in one element may be compensated for 'by a strong showing as to the other, or by some other indicia of reliability.'"[30] Consequently, the affiant need not declare the informant's reliability when the informant's statements are corroborated by extrinsic information.[31]  The Tenth Circuit has held that an officer can manifest a reasonable belief that the warrant was properly issued when the officer takes steps to investigate the informant's allegations.[32]

The Court finds that Agent Lane acted reasonably and in good faith because the affidavit in support of the warrant contained sufficient indicia of probable cause.  The affidavit accurately describes the premises to be searched.  The affidavit contains information that defendant said he downloaded child pornography images from the internet, had an interest in sexually abusing young girls, and possessed a large binder in which he stored images of child pornography.  The affidavit sets forth the details of the recorded telephone conversation, which contains strong inferences that the informant and defendant are discussing child pornography.  The affidavit also presents factual corroboration of significant portions of the informant's statement:  Agent Lane corroborated the defendant's identity, the vehicle he was driving, his employment, and the fact that he owned a computer and that he lived alone.  The affidavit informed the magistrate judge of the underlying circumstances from which Agent Lane concluded that the informant was reliable, in particular the fact that the informant was willing to testify and to make repeated attempts to record a telephone call with defendant.  This corroboration distinguishes this affidavit from the

---

[30]*United States v. Corral*, 970 F.2d 719, 727 (10th Cir. 1992).

[31]*United States v. Sturmoski*, 971 F.2d 452, 457 (10th Cir. 1992).

[32]*United States v. Danhauer*, 229 F.3d 1002, 1007 (10th Cir. 2000) (citing *United States v. Bishop*, 890 F.2d 212, 217 (10th Cir. 1989)).

wholly conclusory "bare bones" affidavits condemned by the Supreme Court.[33]

It is important to also consider that Agent Lane was able to interview the informant and assess her credibility and that this circumstance gives greater weight to her decision to rely on her information. Agent Lane exercised diligence in confirming much of the information supplied by the informant, ultimately leading to the recorded conversation with defendant. Agent Lane presented that evidence to the magistrate judge and obtained a warrant not "devoid of factual support."[34] A warrant based upon the information supplied in this case to the magistrate judge would not have been recognized by a reasonably well-trained officer as illegal. Accordingly, Agent Lane's belief in the legal validity of the warrant was objectively reasonable, and the case falls within the good faith exception of *Leon*.

In so ruling, the Court notes that suppression of evidence obtained pursuant to a warrant should be ordered only in limited circumstances, where exclusion will further the purpose of the exclusionary rule—to deter police misconduct. The Court finds no such misconduct occurred here. Although some of the underlying details provided by the informant proved to be untrue, the Court finds that they were overcome by Agent Lane's strong showing as to other corroborated facts as well as other indicia of the informant's reliability. Accordingly, the Court finds that under the totality of the circumstances, Agent Lane could reasonably presume the warrant was valid.

### C.    Scope of the Search

Finally, defendant challenges the warrant and Addendum as authorizing an overbroad,

---

[33]*Gates*, 462 U.S. at 239.

[34]*United States v. Bishop*, 890 F.2d 212, 217 (10th Cir. 1989) (quotation omitted).

general search of defendant's computer.  In support of this argument, defendant points to the language in the Addendum authorizing the agent to search the computer by "(b) 'opening' or cursorily reviewing the first few 'pages' of such files in order to determine the precise content." Thus, defendant argues, the protocol provided that the executing agent could open and examine *every* file, whether or not that file could possibly contain child pornography.  Sergeant Owen testified at the hearing that forensic software automatically finds all images from computer files so that he does not have to open each file to determine its content.  The software also allows keyword searching that is used to narrow the number of files that may contain relevant text.  While the warrant allowed Sergeant Owen to open every file and look at the first few pages, he did not need to do so because such a broad search is unnecessary with modern forensic software. Alternatively, defendant asserts that the government did not present evidence in support of a good faith argument for the execution of an overbroad search warrant and the record does not provide support for the exception.  Because Sergeant Owen knew the warrant authorized an unnecessarily intrusive search, defendant argues the good faith exception does not apply.

The Court disagrees.  The warrant authorized a search for various types of correspondence that could have been found in text files in the computer, including: (1) correspondence pertaining to the "possession, receipt, or distribution" of child pornography; (2) correspondence pertaining to "travel in interstate commerce for the purpose of engaging in sexual activities with minors"; (3) correspondence "offering to transmit through interstate commerce including . . . by computer . . . any visual depictions of minors engaged in sexually explicit conduct"; and (4) correspondence "identifying persons transmitting, through interstate commerce including . . . by computer, any visual depictions of minors engaged in sexually

explicit conduct."  The warrant also authorized the search for other items that were likely to be contained in text files, such as "ledgers," "records" of transactions involving child pornography, "address books," "mailing lists," and "diaries, notebooks, notes and other records reflecting personal contact or any other activities with minors visually depicted while engaged in sexually explicit conduct."  To find these files, which would appear in text format, could in some instances, require Sergeant Owen to "'open[]' or cursorily read[] the first few 'pages' of such files in order to determine their precise contents."  Although it was not required in this case, Sergeant Owen has, during other examinations, encountered non-image files that were responsive to his key word search.  In those situations, a review of the first page or pages was necessary to determine whether the file was relevant to the investigation.  Thus, Sergeant Owen's examination of the defendant's computer was limited to the specific areas and things for which there was probable cause to search, and the warrant did not authorize the search and seizure of evidence for which there was no probable cause.

Moreover, Sergeant Owen did not engage in an impermissibly broad search for the items listed in the warrant.  Sergeant Owen did not rummage through all files contained on the defendant's computer.  Instead, he limited his search to items Agent Lane identified as most relevant to her investigation.  Sergeant Owen concentrated on those files most likely to contain child pornography images, correspondence, and other documents; and he thereby avoided searching files that did not contain these items.

Finally, the Court notes that the Tenth Circuit has "adopted a somewhat forgiving stance when faced with a 'particularity' challenge to a warrant authorizing the seizure of computers."[35]

---

[35]*United States v. Grimmett*, 439 F.3d 1263, 1269 (10th Cir. 2006) (citation omitted).

The court has explained that "[o]fficers must be clear as to what it is they are seeking on the computer and conduct the search in a way that avoids searching files of types not identified in the warrant."[36]  However, the court has also recognized that a computer search "may be as extensive as reasonably required to locate the items described in the warrant."[37]  Despite the broad terms of the warrant in this case, Sergeant Owen testified that he limited his search to items Agent Lane identified as most relevant to her investigation.  Sergeant Owen concentrated on those files most likely to contain child pornography images, correspondence and other documents.  No "wholesale searching" occurred in this case, despite the broad authority the warrant may have granted.[38]  Indeed, the evidence presented to the Court through the testimony of Sergeant Owen shows that considerable efforts were made to minimize the search of the files on defendant's computer.  Defendant's motion to suppress on this ground is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion to suppress (Doc. 19) is DENIED.

Dated this 13th day of May 2008.

 S/ Julie A. Robinson
Julie A. Robinson
United States District Judge

---

[36]*Id.* at 1270 (quoting *United States v. Walser*, 275 F.3d 981, 986 (10th Cir. 2001)).

[37]*Id.* (quotation omitted).

[38]*See id.* (citing *Walser*, 275 F.3d at 987)).